**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| ANTHONY L .GAINES, | ) | CASE NO:    1:08 CV 648 |
| | ) | |
| Petitioner, | ) | JUDGE ECONOMUS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | VECCHIARELLI |
| BENNIE KELLY, Warden, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Anthony Gaines ("Gaines"), challenges the constitutionality of his conviction in *State v. Gaines*, Case No. CR-418255 in the Cuyahoga County Common Pleas Court.  Gaines, through counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C.§ 2254 on March 14, 2008, in the United States District Court for the Northern District of Ohio.  (Doc. No. 1.)  Respondent filed a Return of Writ on June 27, 2008  (Doc. No. 6.) and Gaines filed a Traverse on August 4, 2008 (Doc No. 8).

This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2.  For the reasons set forth below, the Magistrate Judge recommends that Petition be DENIED.

**I. Factual Background**

The Eighth Circuit Court of Appeals, Cuyahoga County, Ohio set forth the facts of this case in affirming Gaines' 2002 judgment of conviction on direct appeal:

A jury found defendant Anthony Gaines guilty of murder, aggravated robbery, grand theft motor vehicle and tampering with evidence.  The court made a separate guilty finding on a charge of having a weapon under disability.  Broadly stated, the issues raised in this appeal contest the sufficiency of the evidence supporting the conviction and the admission of certain pieces of evidence.

Family members found the victim's body in the basement of her house on January 3, 2002.  She had been shot eight times, and bullets and casing found in the kitchen suggested that she had been shot in that room and dragged down to the basement.  The police found evidence that the kitchen floor had been cleaned after the body had been moved to the basement.  There were no signs of breaking and entering.  The coroner could not give a precise time of death, but estimated that it occurred between 2:00 a.m. and 2:00 p.m. on January 2, 2002.  One of the victim's next-door neighbors testified with conviction that she heard "four or five gunshots" between 7:00 and 8:00 p.m. on January 1st and then perhaps fifteen to twenty minutes later saw a silver car pulling out of the victim's driveway.  She did not see the driver.

The state built its case against Gaines on circumstantial evidence.  The evidence showed that Gaines and the victim were romantically involved, but for the last four months of her life the victim also maintained an intimate relationship with a man named Charles Fagan.  Fagan had befriended the victim when the victim's car sustained serious damage in an accident.  At first, Fagan drove the victim to work, but he soon lent her three different cars.   At the time of her death, the victim drove Fagan's silver Mercury.  Gaines knew about the loaned car, and previously used it without either Fagan's or the victim's permission.  Because of this, the victim restricted Gaines' use of the car and erected a locked fence in her driveway to keep Gaines from using the car.

When the family members discovered the victim's body, they could not find Fagan's silver car.  The police later discovered it being driven by two drug dealers.  The drug dealers told the police that Gaines had traded them the car for drugs.  Witnesses testified that Gaines had been at the victims's house on New Year's Day, and that he had driven the victim's car that day to run errands for her.

To establish a motive for the murder, the state official offered into evidence a number of letters Gaines wrote the victim.  The letters asserted his love for her and jealousy of Fagan.  To bolster the contents of these letters, the state presented testimony from a handyman who performed odd jobs for the victim and her neighbor.  The handyman testified that he had a conversation with Gaines three months before the murder in which Gaines informed him that he found a leather coat in the victim's house.  The handyman quote Gaines as saying 'he was tired of the [the victim's] BS, that he would kill her, her mother, brother, daughter, he didn't give an F."  In reference to his commitment to stay in a

2

relationship with the victim, on the letters contained this passage: 'I will fight or die for mine, or do what ever [sic] it takes to keep mine, what ever [sic] it take [sic].'

(Respondent's Exhibit 1, 2003-Ohio-6855 at ¶¶ 1-5.)

## II. Procedural History

### A. Post-Sentencing Procedural Posture

On January 9, 2003, Gaines, through new counsel (attorney Michael T. Fisher), filed notice of appeal in the Cuyahoga County Court of Appeals from the December 27, 2002 judgment of conviction and sentencing. (Respondent's Exs. 11 and 12.)

On July 16, 2003, Gaines' counsel filed an appellant's brief presenting the following five assignments of error for review:

1. The trial court erred by allowing inadmissable evidence in violation of Ev.R. 801 802, 901, 404(B), 403 and 406 and Appellant's rights under Article I, Section 16 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution.

2. The trial court erred to the prejudice of the Appellant in denying Appellant's motions for mistrial.

3. The trial court committed plain error in convicting and sentencing Appellant in violation of his State and Federal rights against Double Jeopardy.

4. The trial court erred in denying Appellant's motion for acquittal when the state failed to present sufficient evidence of offenses charged in the indictments.

5. Whether Appellant's convictions are against the manifest weight of the evidence.

(Respondent's Ex. 13 at pp. 1-2, Table of Contents.)

The State filed its brief on September 29, 2003. (Respondent's Ex. 14.) Gaines'

counsel filed a reply brief on October 10, 2003.  (Respondent's Ex. 15.)  On December 18, 2003, the state appeals court announced its judgment affirming the conviction. (Exhibit 1; also see, Respondent Ex. 16). That judgment was journalized, and became a final order subject to further appeal, on January 12, 2004, subsequent to denial of Gaines's motion for reconsideration on January 12, 2004. (Ex. 16; also see Ex. 12, Docket, and Respondent's Exhibit 17.)

On February 26, 2004, Gaines, through counsel Fisher, filed his timely notice of appeal and jurisdiction memorandum in the Ohio Supreme Court from the January 12, 2004 judgment in COA 82301. (Respondent's Ex. 18; Respondent's Ex. 19, Respondent's Ex. 20.)

Gaines presented nine propositions of law:

**Proposition of Law No. 1:** Where a Court of Appeals has identified that a trial court ruling is erroneous, and has not addressed whether such erroneous ruling is harmless beyond a reasonable doubt, the conviction cannot be affirmed.

**Proposition of Law No. 2:** Where the accused is charged with a theft offense, the trial court commits reversible error by allowing the State to present inadmissible hearsay under the guise of 'habit' testimony when the hearsay concerns the permission to use the property in question.

**Proposition of Law No. 3:** Personal letters, written from a defendant to his alleged victim, do not constitute permissible 'other acts' evidence to prove intent to kill when the letters were not written reasonably near the time of her death, nor do the letters demonstrate a scheme, plan, or system.

**Proposition of Law No. 4:** Personal letters written from a defendant to his alleged victim should be excluded from evidence when the letters are more prejudicial than probative.

**Proposition of Law No. 5:** A mistrial should be granted by the trial court when prosecution witnesses repeatedly provide prejudicial and inadmissible testimony.

>**Proposition of Law No. 6:** A defendant is denied a fair trial and his motion for mistrial should be granted when jurors in a criminal case demonstrate through a question that they assume the defendant has a prior criminal record and that he has served a prior prison term.
>
>**Proposition of Law No. 7:** An alternate juror should not replace a seated juror over defendant's objection without a hearing to determine the unavailability of the seated juror.
>
>**Proposition of Law No. 8:** The trial court commits plain error in convicting and sentencing Appellant in violation of his State and Federal rights against Double Jeopardy when the state's witnesses caused the first mistrial.
>
>**Proposition of Law No. 9:** It is an abuse of discretion for the trial court to deny appellant's Rule 29 motion for acquittal when the evidence is insufficient as a matter of law.

(Ex. 19, at pp. i-ii).

On March 29, 2004, the State filed its jurisdiction response. (Respondent's Ex. 21.)

On June 9, 2004, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. (Respondent's Ex. 22.) There was no further appeal from that judgment. (Respondent's Ex. 20).

### B. *Pro se* Petition for Postconviction Relief

On August 11, 2003, and while his direct appeal was pending in COA 82301, Gaines filed a *pro se* petition for postconviction relief in the trial court, claiming that trial counsel was ineffective in (a) not preparing a defense where counsel failed to call witnesses at trial to establish Gaines' innocence, and (b) refusing to subpoena witnesses to prove Gaines' innocence. (Respondent's Ex. 23.)

On December 8, 2003, the trial court denied postconviction relief. (Respondent's Ex. 24.)  On September 2, 2005, Gaines filed a *pro se* motion to amend his

5

postconviction petition. (Respondent's Ex. 25.)   The State opposed amendment of the petition on September 12, 2005. (Respondent's Ex. 26.)  On September 29, 2005, the trial court denied leave to amend the petition. (Respondent's Ex. 27.)

On January 17, 2006, the trial court issued findings of fact and conclusions of law denying postconviction relief, finding, in part, that the claims presented in the petition were barred by *res judicata* in that they could have been presented on direct appeal. (Respondent's Ex. 28.)

On February 16, 2006, Gaines filed timely *pro se* notice of appeal in the Cuyahoga County Court of Appeals from the January 17, 2006 judgment denying postconviction relief. (Respondent's Ex. 29.)  On April 17, 2006, the state appeals court dismissed the appeal due to Gaines' failure to file the record pursuant to Ohio App.R. 3(A), 10(A), and Loc.App.R. 10. (*See* Respondent's Ex. 30.) The appeal was reinstated by the appeal court on April 25, 2006. (*Id.*).

On May 24, 2006, Gaines' filed his *pro se* appellant's brief presenting the following lone assignment of error for review:

> Appellant Anthony Gaines was denied his state and federal constitutional rights to the effective assistance of trial counsel, and the court below erred in denying and dismissing Mr. Gaines' postconviction petition alleging this denial of rights. (Findings of Fact and Conclusions of Law filed January 17, 2006.)

(Respondent's Ex. 31 at p. i, Table of Contents.)  In support of the assignment, Gaines only argued that the trial court erred in failing to conduct an evidentiary hearing on the postconviction petition prior to ruling on that petition. (*Id.*, at pp. 3-6).

The State filed its brief on July 19, 2006. (Respondent's Ex. 32.)

On November 30, 2006, the state appeals court announced its judgment affirming the conviction. (Respondent's Ex. 33; *also see*, Respondent's Ex. 34.) That judgment was journalized, and became a final order subject to further appeal, on December 11, 2006. (Ex. 34.)

On December 27, 2006, Gaines filed his timely *pro se* notice of appeal and jurisdiction memorandum in the Ohio Supreme Court from the December 11, 2006 judgment in COA 87768. (Respondent's Ex. 35, Respondent's Ex. 37.)

Gaines presented one proposition of law:

Proposition of Law No. 1: A criminal defendant is denied the effective assistance of counsel when his attorney fails to perform adequate investigation before trial.

(Respondent's Ex. 36, at p.i.)

On March 14, 2007, the Ohio Supreme Court declined jurisdiction and dismissed the appeal as not involving any substantial constitutional question. (Respondent's Ex. 38.) There was no further appeal from that judgment. (Ex. 37.)

**C.     Federal Habeas Corpus Petition**

On March 14, 2008, Gaines, through new counsel (Assistant Ohio Public Defender Craig Jaquith), filed the instant petition for writ of habeas corpus. (Doc. 1). Gaines presents one ground for relief claiming a violation of the effective assistance of appellate counsel in not claiming sentencing error:

GROUND FOR RELIEF NO. 1: Petitioner was deprived of his right to the effective assistance of appellate counsel, as guaranteed by the Sixth Amendment to the United States Constitution, based on appellate counsel's failure to raise a claim that Petitioner's sentence was imposed in contravention of the Sixth and Fourteenth Amendments to the United States Constitution.

7

> Supporting FACTS: The trial court violated Gaines' due process rights, and the appeals court failed to correct the error, when it failed to order a mistrial in response to the admission of inflammatory and prejudicial evidence at trial, regarding Gaines' prior prison service. Such a result is contrary to *Payne v. Tennessee*, *Darden v. Wainwright*, and *Donnelly v. DeChristoforo*.

(Doc. 1, Petition, at ¶ 12(a)).

In the Petitioner's Traverse, Gaines notes that his Petition "suffers from an editing error. . . resulting in superfluous language regarding an ineffective assistance claim that was not intended to be raised. . . ." Gaines requests that the language be disregarded and that only the Due Process claim, raised in the Supporting Facts be considered Gaines sole claim in the instant action. As the substance of this ground was presented in the supporting facts and fully briefed by Respondent in the Return of Writ, the Court will review the due process claim as the sole ground for relief.

### III.     Review on the Merits

#### A.     Standard of Review

This case is governed by provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996), because Gaines filed his habeas petition after the effective date of AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

8

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law can be determined only by examining the holdings of United States Supreme Court, as opposed to dicta. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). Nevertheless, an explicit statement by the Supreme Court is not required; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010, *quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002). As the plain language of the statute indicates, the inquiry is limited to decisions by the Supreme Court. *Williams*, 529 U.S. at 412.

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413.

A state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* An incorrect state court decision may not be unreasonable under this standard. *Id.* at 410-11. For this reason, a federal habeas court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the federal court must

9

determine that the state court decision is an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions."  *Strickland v. Pitcher*, No. 03-2113, 2006 WL 68438, at *4 (6th Cir. Jan.10, 2006), *citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir.1998) ("[AEDPA] tells federal courts: Hands off, unless the judgment in place is based on an error grave enough to be called unreasonable.")  The "unreasonable" requirement is a high bar.  *See Ruimveld*, 404 F.3d at 1010.

### B.     Prior Bad Acts Evidence

Gaines asserts that '[t]he trial court violated [his] due process rights, and the appeals court failed to correct the error, when it failed to order a mistrial in response to the admission of inflammatory and prejudicial evidence at trial, regarding Gaines' prior prison service." (Traverse at 2.)    Specifically, Gaines claims that jurors were able to deduce that Gaines had previously served time in prison from eleven letters he had written the decedent that were admitted into evidence.   As noted by the Respondent, direct references to Gaines' incarceration were redacted from the copies given to the jurors.  (*See* Respondent's Ex. 13.)   However, jurors apparently inferred that Gaines served time in prison, as evidenced by their written question to the trial court during deliberations: "Can we know the length of time Anthony Gaines was incarcerated in 2001?"  (Respondent's Ex. 43, Tr. at 940.)  Upon receiving the jury's question, the trial court instructed the jurors:

> It is improper for you to presume, surmise, or consider that Defendant Gaines was incarcerated in 2001, or at any other time.  The defendant has the constitutional right not to testify, not to take the witness stand in his own defense.  The fact that he, the defendant, did not testify must not be considered for any purpose.

10

(*Id.* At 942-43.)

The Sixth Circuit has explicitly stated, "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

In *Bugh*, the petitioner filed a habeas petition in federal court alleging that the Ohio trial court admitted evidence of uncharged acts of child molestation in violation of his constitutional right to due process. The Sixth Circuit noted that the federal district court "could not provide habeas relief even if the prior acts testimony was admitted in violation of Ohio law." *Id.*  The Sixth Circuit held that no clearly established federal law "contrary to" the trial court's decision existed.  The Sixth Circuit based its reasoning on *Estelle v. McGuire*, where the Supreme Court declined to address the issue of "whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."  502 U.S.62, 75 n.5 (1991). The Sixth Circuit explained that the Supreme Court's decision to leave the issue unresolved means that federal habeas courts may not conclude that state trial decisions admitting other acts evidence to prove propensity are contrary to, or involve objectively unreasonable applications of, clearly established federal law. *Bugh*, 329 F.3d at 512-13.

11

The Supreme Court has long held, however, that state court evidentiary rulings may violate due process if they render a trial fundamentally unfair.  *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996);  *Dowling v. United States*, 493 U.S. 342, 352 (1989).  Although there is no bright line rule for determining when evidentiary rulings render a trial fundamentally unfair, the lack of such a rule does not foreclose federal habeas review under AEDPA.  In *Williams*, the Court noted that "rules of law may be sufficiently clear for habeas purposes even when they are expressed in terms of a generalized standard rather than as a bright-line rule."  529 U.S. at 382.

The Supreme Court has provided the following standard:  state court evidentiary rulings cannot rise to the level of due process violations unless they "offend some principle of justice so deeply rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. at 43).  In *Dowling*, after the Supreme Court stated that it has "defined the category of infractions that violate 'fundamental fairness' very narrowly,"  493 U.S. at 352, it set forth the limited nature of the question before a federal court faced with an alleged Due Process Clause violation:

> Judges are not free in defining 'due process,' to impose on law enforcement officials [their] 'personal and private notions' of fairness and to 'disregard the limits that bind judges in their judicial function.' [They] are to determine only whether the action complained of . . . violates those 'fundamental conceptions of justice that lie at the base of our civil and political institutions,' and which define the community's sense of fair play and decency.'"

*Id.* at 353.

Although it may be difficult to apply, the Supreme Court has repeatedly articulated the above standard for determining whether a trial has been rendered

12

fundamentally unfair by trial court rulings.  This Court must determine whether the admission of other acts evidence at Gaines's trial violated some "principle of justice so deeply rooted in the traditions and conscience of our people as to be ranked as fundamental."

The gist of Gaines' claim is that the jurors improperly considered a fact not in evidence - specifically Gaines' prior prison sentence - in rendering their guilty verdict.  Gaines maintains that the jurors' knowledge of the prior prison sentence rendered his trial fundamentally unfair.

As sole support for this argument, Gaines cites an unpublished Second Circuit decision, *Benjamin v. Fischer*, 87 Fed. Appx. 761 (2nd Cir. 2004).  In *Benjamin*, the jury deliberately sought extrinsic information about the defendant's prior criminal record.  The information was contained in a police report offered into evidence by the defense.  Before submitting the exhibit to the jury, however, defense counsel redacted information regarding his client's prior criminal record with a black pen.  *See Benjamin v. Fischer*, 248 F.Supp.2d 251 (S.D.N.Y. 2002).  Because the redaction was poorly executed, the jury was able to "place [] the police report up to the light, read through the black ink, and discovered [the defendant's] prior robbery arrests."  *Id.* at 257.  The jury's behavior came to light when one of the jury members notified both defense counsel and the trial court the jury's actions and that the facts of defendant's prior arrests "seemed to influence some of the jurors, especially some who at the time were still undecided about the verdict."  *Id.* at 263.  The Second Circuit noted, "this is not a case in which a jury innocently considered prejudicial material that a defense counsel simply forgot to delete from an exhibit.  This is a case in which jurors engaged in extraordinary efforts to

13

discover information that had been blacked-out from their view." Benjamin, 87 Fed. Appx. at 763.  The Second Circuit ruled that the use of this extrinsic bad acts evidence by the jury violated the defendant's due process rights and in light of the facts that "the defendant's identity as the charged robber was hotly disputed, where the reliability of victim identification was vigorously challenged, and where the jury plainly had difficulty reaching a unanimous verdict, the district court correctly concluded that the jury's exposure to this extrinsic information could not be deemed harmless error. . . ."  *Id.*

The instant case is distinguishable from *Benjamin*.  Whereas in *Benjamin*, the jury specifically sought information outside the evidence admitted, the only evidence before this Court is that jury in the instant action used the admitted evidence to deduce that Gaines had served prior prison time.   No one has alleged that the jurors had access to information outside the record.  As noted by Respondent, and evidenced by the record, the jury did not have redacted originals of the letters at issue.  Rather, the trial court redacted the originals and then provided the jury photocopies of the redacted exhibits.  (Ex. 42 at Tr. 720:14-24.)

Moreover, the fact that the trial court specifically admonished the jurors that it is improper for them to "presume, surmise, or consider that Defendant Gaines was incarcerated in 2001, or at any other time" further supports a finding that Gaines' trial was not fundamentally unfair.  *See Dowling*, 493 U.S. at 353 ("Especially in light of the limiting instructions provided by the trial judge, we cannot hold that the introduction of [petitioner's] testimony merits" a finding of fundamental unfairness.)  No evidence exists that the jurors disregarded the judge's warning or that they considered extrinsic evidence regarding Gaines' prior prison in arriving at a guilty verdict.

Gaines has not demonstrated that the admission of the letters or the jury's belief that Gaines was incarcerated in 2001 was fundamentally unfair and that he was denied due process of law.  Therefore, the Magistrate Judge recommends that the Gaines' petition be DENIED.

## IV.  Conclusion

For the foregoing reasons, the Magistrate Judge recommends the Petition be **DENIED.**

                                      s/ *Nancy A. Vecchiarelli*
                                      Nancy A. Vecchiarelli
                                      United States Magistrate Judge

Date:  September 15, 2008

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of this notice.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**